IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Richard Davis and Constance Davis,                     Case No. 3:07CV1522

        Plaintiffs

   v.

         ORDER
Creditors Interchange Receivable Management, LLC, et al,

       Defendants.


    In this case plaintiffs, Richard and Constance Davis, allege that the defendant debt collection agency, Creditors Interchange Receivable Management, LLC [Creditors Interchange], and its defendant employees violated the federal Fair Debt Collection Practices Act [FDCPA], 15 U.S.C. § 1692 *et seq.*, by engaging in unlawful debt collection practices. The plaintiffs also assert an Ohio state law claim for invasion of privacy. Jurisdiction over the FDCPA claim is proper under 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state law claim is proper under 28 U.S.C. § 1367.

    Pending is the plaintiffs' Motion and Memorandum for Ruling on Disputed Legal Issues [Doc. 23]. The plaintiffs and defendants have a dispute over discovery that could not be resolved in an informal conference. To determine whether the plaintiffs' discovery requests are proper, I must address several contested issues of law: 1) the relevant standard for assessing actual damages for

1

emotional distress under the FDCPA; 2) the availability of punitive damages for invasion of privacy under Ohio tort law; and 3) the propriety of contact between the plaintiffs' counsel and current and former employees of the defendant debt collection company. For the following reasons, the plaintiffs' discovery requests are granted.

### Background

The facts, as alleged by the plaintiffs, are as follows. Defendant Creditors Interchange began contacting plaintiffs Richard and Constance Davis regarding an alleged debt owed on a Chase credit card account in January, 2007.

In Spring, 2007, Creditors Interchange repeatedly called Mrs. Davis at work, sometimes up to three or four times per day. Mrs. Davis told the defendants that she could not take their phone calls because she was busy. In March, 2007, defendants called Mrs. Davis at work sixteen times in one day. On at least one occasion, the defendants tied up multiple phone lines at Mrs. Davis's workplace demanding to speak with her. The defendants also contacted other employees at Mrs. Davis's work threatening to sue Mrs. Davis and garnish her wages.

The defendants contacted Mr. Davis at work threatening to issue a warrant for his arrest for failing to pay the alleged debt to the defendants. Defendant Daniel Kapanek, an employee of Creditors Interchange, emailed Mr. Davis's employer demanding that Mr. Davis contact the defendants by four o'clock that afternoon.

Defendants continued to contact the plaintiffs after being notified that the plaintiffs were represented by counsel. The defendants also contacted third parties attempting to collect on the

Davis's alleged bill. Among those contacted were an ex-wife of Richard Davis and plaintiff Constance Davis's son.

Plaintiffs filed suit against defendants Creditors Interchange, Daniel Kapanek, and unnamed employees of Creditors Interchange on May 24, 2007. On February 6, 2008, plaintiffs issued a combined written discovery request, including interrogatories, requests for admissions, and request for production of documents. The defendants answered the requests for admissions on March 7, 2008. The defendants partially answered the requests for production on March 31, 2008, and partially answered the interrogatories on April 16, 2008. To date, the defendants have not responded in full to the requests for production or the interrogatories.

The parties informally resolved part of their discovery dispute. Regarding the unresolved discovery disputes, this Court had the parties submit a summary of their discovery disputes to the court. On June 3, 2008, this Court held a conference with the parties. I determined that resolution of the dispute needed briefing on certain issues, and the parties timely filed briefs.

## Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Rule 26 permits a court to limit the scope of discovery by court order. *Id.; see also Surles ex rel. Johnson v. Greyhound Lines, Inc.,* 474 F.3d 288, 305 (6th Cir. 2007) (discussing a district court's ability to limit discovery); *Brantley Capital Corp. v. Pinkas,* 2007 WL 2034420, at *1 (N.D. Ohio) ("the law vests a trial court with the authority to limit pretrial discovery").

The trial court has broad discretion to determine the proper scope of discovery. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). The Sixth Circuit has held that "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles, supra*, 474 F.3d at 305 (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)).

**Discussion**

**1. Whether Plaintiffs Must Meet the Standard
Applicable to a Claim for Intentional Infliction
of Emotional Distress to Recover Actual Damages
Under the FDCPA**

The plaintiffs argue that they are eligible to recover actual damages for emotional distress arising from a violation of the FDCPA without proving that the defendants' conduct satisfies the elements of intentional or negligent infliction of emotional distress under Ohio law.

Generally, the FDCPA permits recovery of actual damages for emotional distress. Under the FDCPA, 15 U.S.C. § 1692k(a)(1), "any debt collector who fails to comply with [the FDCPA] with respect to any person is liable to such a person in an amount to the sum of . . . any actual damages sustained by such person as a result of such failure." The FTC Commentary to the FDCPA states that these "actual damages" for FDCPA violations include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress" as well as "out-of-pocket expenses." Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13, 1988) (Section 813 - Civil Liability). *See also Becker v. Montgomery, Lynch*, 2003 WL 23335929, at *2

4

(N.D. Ohio) (FDCPA permits recovery of actual damages for emotional distress); *Minick v. First Federal Credit Control, Inc.* 1981 U.S. Dist. LEXIS 18622, at *3-4 (N.D. Ohio) (upholding award of actual damages for emotional distress).

The issue here is the applicable standard for determining whether a plaintiff has proven actual damages for emotional distress resulting from an FDCPA violation. This a matter of federal law. *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 239 (1969). To determine the appropriate standard, however, a court may consider "both federal and state rules on damages," and rely on "whichever best serves the policies expressed in federal statutes." *Id.* at 240. Regardless of whether a rule of damages is "drawn from federal or state sources," however, the rule must be "responsive to the need whenever a federal right is impaired." *Id.; see also Carrigan v. Central Adjustment Bureau, Inc.* 502 F. Supp. 468, 471 n.2 (N.D. Ga. 1980).

The Sixth Circuit Court of Appeals has not ruled on the issue, but a majority of district courts have concluded that the FDCPA does not require a plaintiff to satisfy the state law elements of intentional or negligent infliction of emotional distress to recover actual damages for emotional distress under 15 U.S.C. § 1692k(a). Among these are Judges of the Northern District of Ohio and other districts in the Sixth Circuit, and each has concluded that the FDCPA adopts a less stringent standard than state tort law.

Thus, in *Becker v. Montgomery, Lynch,* No. 02-CV-874, at *2 (N.D. Ohio) the court held that "[s]tate law requirements regarding the proof of intentional or negligent infliction of distress are not applicable to actual damages under the FDCPA." Likewise, in *Minick v. First Federal Credit Control, Inc.,* 1981 U.S. Dist. LEXIS 18622, at *3-4 (N.D. Ohio), the court upheld an award of emotional distress damages for an FDCPA violation. While the court did not explicitly discuss the

5

appropriate standard for awarding emotional distress damages, it did not reference Ohio tort law in upholding the award. Further, the court in *Minick* favorably cited the Eighth Circuit's ruling in *Millstone v. O'Hanlon Reports, Inc.,* 528 F.2d 829, 834 (1976) (construing actual damage provision of the federal Fair Credit Reporting Act), which held that a plaintiff could collect emotional damages under another federal statute "quite apart from any recovery he might have sought" under state tort law. *See also Willings v. International Portfolio Management,* No. 04-CV-139, at *3 (W.D. Mich., March 10, 2006)*; Lee v. CBC Company, Inc.,* 1996 U.S. Dist. LEXIS 21993, at *24 (S.D. Ohio).

Defendants challenge the precedential value of the court's ruling in *Becker* because in that case the defendant debt collector was in default and did not appear to challenge the plaintiff's interpretation of the FDCPA.

That does not matter; in ruling on a question of law, a court is presumed to have done so correctly, even if one party was not present. *See* 21 *C.J.S. Courts* § 188 (2008) ("A court must apply controlling law, regardless of whether either party relies on it. . . . The court retains the independent power to identify the proper construction of the governing law, and the parties do not compel a court to misconstrue a statute by arguing only incorrect interpretations of it.").

In *Smith v. Law Offices of Mitchell N. Kay,* 124 B.R. 182 (D. Del. 1991), the court offered three reasons supportive of the majority position. First, Congress intended for the FDCPA to create a more effective weapon against abusive debt collection practices than provided by existing state law remedies. *Id.* at 188. Second, Congress designed the FDCPA to create a uniform law governing debt collection. *Id.* at 189. Third, the structure and purpose of the FDCPA closely track the Fair Credit Reporting Act [FRCA], and courts interpreting the FRCA have concluded that "actual

6

damages for emotional distress can be proved independently of state law requirements" for intentional or negligent infliction of emotional distress. *Id.* at 188.

District courts elsewhere have reached the same conclusion – that courts must determine actual damages under the FDCPA using a standard apart from state tort law. *See, e.g., Donahue v. NFS, Inc.,* 781 F. Supp. 188, 193 (W.D.N.Y. 1991); *In re Maxwell,* 281 B.R. 101, 118 (Bankr. D. Mass. 2002); *In re Hart,* 246 B.R. 709, 732 (Bankr. D. Mass 2000); *Miller v. Midland Funding, LLC,* 2008 WL 4093004, at *3 (C.D. Cal.); *Lowe v. Elite Recovery Solutions, L.P.,* 2008 WL 324777, at *4 (E.D. Cal.); *Panahiasl v. Gurney,* 2007 U.S. Dist. LEXIS 17269, at *3 (N.D. Cal.); *Wenrich v. Cole,* 2000 U.S. Dist. LEXIS 18687, at *15 (E.D. Pa.); *Howze v. Romano,* 1994 U.S. Dist. LEXIS 20547, at *8-9 (D. Del.).

The defendants rely on *Costa v. National Action Financial Services,* 2007 WL 4526510 (E.D. Cal.), which required the plaintiffs to show the elements of intentional infliction of emotional distress under California law to collect emotional distress damages for a FDCPA violation. *Id.* at *8.

In *Costa*, the court offered two reasons for using state law to interpret the FDCPA's damage rules. First, the court concluded that the FDCPA "contains no indication that Congress intended to create a more lenient" standard for recovering emotional distress damages with FCDPA. *Id.* at *8. Second, the court noted that 15 U.S.C. § 1692k(a)(1) requires *"definable actual* damages" to recover more than just statutory damages under the FDCPA, and reasoned therefore that the FDCPA required a heightened showing to establish actual damages. *Id.* According to the court in *Costa*, the state law standard for intentional infliction of emotional distress would that "the alleged damages are real and quantifiable." *Id.*; *see also Carrigan v. Central Adjustment Bureau, Inc.,* 502 F. Supp. 468, 471 n.2 (N.D. Ga. 1980) (expressing suspicion that "there is a federal 'common law' rule that

mental distress is an injury for which 'actual' damages can be proven," and concluding that "state law is an appropriate guide to a determination of actual damages" under the FDCPA); *Venes v. Professional Service Bureau,* 353 N.W. 2d 671, 674 (Minn. Ct. App. 1984) (upholding damages award for emotional distress under the FDCPA, but using the elements of intentional infliction of emotional distress in Minnesota to determine that the award was proper).

I conclude that the plaintiffs need not satisfy the elements of the tort of intentional infliction of emotional distress before the jury can find that the defendants caused them actual damages.

Contrary to the court's contention in *Costa*, both the language of the FDCPA and the statute's legislative history indicate that Congress anticipated a more lenient standard for proving emotional damages.

The drafters of the FDCPA believed existing state laws could not stop widespread abusive debt collection practices. The FDCPA findings and declaration of purpose cite "abundant evidence" of "abusive, deceptive, and unfair debt collection practices by many debt collectors," noting that "[e]xisting laws and procedures" were "inadequate to protect consumers." 15 U.S.C. § 1692(a)-(b). The Senate Committee report for the FDCPA elaborated, stating that "[t]he primary reason why debt collection abuse is so widespread is the lack of meaningful legislation on the State level." S. Rep. 95-382, at 1697 (1977). "Existing state laws," the Committee stated, "are inadequate to curb these abuses." *Id.* at 1701. As the court in *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd Crossley v. Lieberman,* 868 F.2d 566 (3d Cir. 1989), observed, the "inadequacy of the tort of intention infliction of mental distress . . . to prevent abusive collection practices" motivated Congress to draft the FDCPA. *See also In re Hart, supra,* 246 B.R. at 732 (Congress intended to "supplement inadequate state law remedies" by enacting FDCPA).

8

The FDCPA's drafters were greatly concerned about emotional harms inflicted by abusive debt collectors. The Congressional findings note that abusive debt collection causes "marital instability" and "invasions of individual privacy" along with economic harms like "personal bankruptcies" and "loss of jobs." 15 U.S.C. § 1692(a). The Senate Committee noted that abusive debt collectors cause "suffering and anguish." S. Rep. 95-382, at 1696. The Committee expressed concern about practices that take a primarily emotional toll, such as using "obscene or profane language, threats of violence, telephone calls at unreasonable hours, . . . [and] disclosing a consumer's personal affairs to friends, neighbors, or an employer." *Id.* Courts construing the FDCPA have noted Congress's concern for emotional harms. *See Crossley v. Lieberman,* 90 B.R. 682, 692 (E.D. Pa. 1988); *Teng v. Metropolitan Retail Recovery, Inc.,* 851 F. Supp. 61, 68-70 (E.D.N.Y. 1994).

The Senate Report underscored the role of private plaintiffs in combating abusive debt collection practices. S. Rep. 95-382, at 1700 (FDCPA will be "primarily self-enforcing" because "consumers who have been subjected to collection abuses will be enforcing compliance.") If courts demanded plaintiffs victimized by these practices meet the tort standard for emotional distress, recovery might often, if not nearly always be unlikely. *See Greene v. Rash,* 89 F.R.D. 314, 316 (E.D. Tenn. 1980) ("the aggrieved plaintiff would not be able to recover any actual damages under 15 U.S.C. § 1692k(a)(1), except to the extent that he or she might have suffered some related out-of-pocket expenses."); *Smith, supra,* 124 B.R. at 188 n.6, ("[e]xisting state laws would, in many cases afford no relief at all to the victim[s] of abusive debt collection practices.").

Denying plaintiffs an adequate remedy risks undermining the entire statutory scheme. Indifference, if not impunity towards its mandate might prevail. Indeed, if Congress is to be viewed

as having incorporated the state standard into the statute, it made little sense or difference for it to have enacted it.

In this case, engrafting the Ohio tort law standard for intentional infliction of emotional distress on the FDCPA would have this perverse effect. To prove intentional infliction of emotional distress under Ohio law a plaintiff must show:

> (1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Garcia v. ANR Freight System, Inc.*, 942 F. Supp. 351, 359 (N.D. Ohio 1996); *see also Tschantz v. Ferguson*, 97 Ohio App. 3d 693, 702 (1994).

Although Ohio law does not expressly require a plaintiff to show physical injury to recover for emotional distress, *see, e.g., Rine v. Sabo*, 113 Ohio App. 3d 109, 119 (1996), a plaintiff must demonstrate "an emotional injury which is both severe and debilitating" such that a reasonable person "would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983); *see also Kovacs v. Bauer*, 118 Ohio App. 3d 591, 598 (1996). Because even serious humiliation and stress may often fall short of "debilitating," this standard frequently would leave victims of abusive debt collection practices with no remedy under the FDCPA.

The fact that 15 U.S.C. § 1692k(a)(1) requires the plaintiff to show "definable actual damages" to recover anything beyond statutory damages does not require courts to engraft state tort law onto the FDCPA. *Cf. Costa, supra*, 2007 WL 4526510, at *8. It may be, as the *Costa* court

10

concluded, that plaintiffs must show that their "alleged damages are real and quantifiable." *Id.* Even if so, courts need not look to state tort law for a suitable standard of damages.

Congress intended, moreover, to provide a uniform, national baseline of protection for victims of abusive debt collection practices. A primary purpose of the FDCPA was to "promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA permits states to enact more stringent debt collection laws, but it expressly preempts state regimes that are less stringent than the FDCPA. 15 U.S.C. § 1692n. *See also* S. Rep. 95-382**,** at *6 (The FDCPA annuls only "inconsistent" state laws, "with stronger State laws not regarded as inconsistent.").

To justify a national baseline, the Senate Committee explained that debt collectors in states with less restrictive laws were undermining efforts by other states to enforce more consumer-friendly laws. At the time the FDCPA was enacted, new telephone technology brought about a "dramatic increase in interstate collections." S. Rep. 95-382, at *3. States seeking to protect consumers found themselves "unable to act against unscrupulous debt collectors who harass[ed] consumers from another state." *Id.* This development, according to the Committee, was a "prime reason why federal legislation was necessary." *Id.*

Interjecting the vagaries of state tort standards into the FDCPA's remedial scheme would undermine, if not defeat entirely the Congressional objective of national uniformity in the statute's application and enforcement. A uniform damages rule, applicable without regard to state standards for recovery for infliction of emotional distress, ensures that debtors in all states uniformly have an adequate remedy against abusive debt collection practices.

11

I find further support for my conclusion that plaintiffs need not meet the state court standard for a claim of intentional infliction of emotional distress in the text of and cases interpreting the FRCA.

First, the damages provisions of the FCRA and FDCPA are textually similar.

The FCRA permits a consumer to recover "any actual damages sustained by the consumer as a result" of willful noncompliance with FRCA. 15 U.S.C. § 1681n(a)(1), The FRCA also permits recovery of actual damages in cases of negligent noncompliance. 15 U.S.C. § 1681o(a)(1).

The "Civil Liability" section of the FDCPA is similarly worded, allowing recovery for "any actual damage sustained" by the injured party as a result of noncompliance. 15 U.S.C. § 1692k(a)(1). Under the FCRA, actual damages may include economic damages and damages for "humiliation and mental distress." *Sloane v. Equifax Information Services, LLC,* 510 F.3d 495, 500 (4th Cir. 2007); *see also Bryant v. TRW, Inc.,* 487 F. Supp. 1234, 1239-40 (E.D. Mich. 1980).

Second, courts construing the FRCA have concluded that the actual damages provision permits recovery for mental anguish apart from state law requirements. In *Millstone, supra,* 528 F.2d at 834, the court upheld the district court's award of actual damages for emotional distress resulting from a FRCA violation. The district court awarded actual damages to the plaintiff for "sleeplessness and nervousness." *Millstone v. O'Hanlon Reports,* 383 F. Supp. 269, 276 (E.D. Mo. 1974). On appeal, the court concluded that the plaintiff had an "independent cause of action under the Fair Credit Reporting Act," and that the standard for damages was "quite apart from any recovery he might have sought in tort." *Millstone, supra,* 528 F.2d at 834.

Other courts have reached a similar conclusion regarding actual damages under FRCA .In *Bryant v. TRW, Inc.* 487 F. Supp. 1234, 1239 (E.D. Mich. 1980), *aff'd* 689 F.2d 72 (6th Cir. 1982), the court instructed the jury to consider "mental anguish," "embarrassment," and "humiliation" in determining the proper measure of actual damages to award the victim of a FRCA violation. Likewise, in *Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509, 514 (5th Cir. 1982), the court affirmed an actual damage award for emotional distress based on the plaintiff's testimony that a denial of credit "hurt him deeply" and caused him "humiliation and embarrassment." In neither case did the court use state tort law to determine the proper damage award. *Smith, supra,* 124 B.R. at 188.

The damages standard under the FRCA has been looked to when determining the appropriate standard under the FDCPA. *See, e.g., Smith, supra,*124 B.R. at 187 ("Due to similarities in language, structure, and purpose between the statutes, it is instructive for this Court to consider how actual damages for emotional distress under the FRCA have been dealt with by other courts"); *see also McGrady v. Nissan Motor Acceptance Corp.,* 40 F. Supp. 2d 1323, 1338 (M.D. Ala. 1998).

This makes sense, as the FDCPA and FRCA share similar purposes. Both are consumer protection statutes "designed not to overly burden valid credit reporting or debt collection practices." *Smith, supra,* 124 B.R. at 187. Both create private rights of action for willful and negligent noncompliance with the statute. *Id.*

The defendants note some differences between these two statutes, but these do not undermine the FCRA's value as an analog to the FDCPA. First, the FRCA permits consumers to recover either actual damages or $1000 in statutory damages, but not both, *see* 15 U.S.C. 1681n(a)(1)(B), whereas the FDCPA allows recovery of $1000 statutory damages regardless of whether the plaintiff collects

13

actual damages, *see* 15 U.S.C. § 1692k(a)(2)(A). This difference, however, is irrelevant to the standard for determining actual damages for emotional distress.

Second, defendants note that debt collection, unlike credit reporting, is an inherently stressful experience for the consumer; thus, the defendant urges, the FDCPA damage rules cannot track those under the FCRA. The fact that being in debt is inherently stressful, however, does not compel a conclusion that state tort law should control damage rules under the FDCPA. It merely suggests that an FDCPA actual damages rule must only award emotional damages for actual, serious emotional distress traceable to proscribed debt collection practices.

In dicta, the court in *Costa* suggested that FCRA damage rules could provide guidance for establishing an actual damages rule under the FDCPA apart from state tort law that would nevertheless require a plaintiff to show "more than transitory symptoms of emotional distress" to recover. 2007 WL 4526510, at *9. In *Sloane, supra,* 510 F.3d at 503 (construing FCRA), for instance, the Fourth Circuit held that "mere conclusory statements" by the plaintiff were not sufficient, and that a court should consider the following factors in determining the propriety of an award for emotional damages:

> [The] factual context in which the emotional distress arose; evidence corroborating the testimony of plaintiff; the nexus between the conduct of the defendant and the emotional distress; the degree of such mental distress; mitigating circumstances, if any; physical injuries suffered due to the emotional distress; medical attention resulting from the emotional duress; psychiatric or psychological treatment; and the loss of income, if any.

*Id.*

In *Wantz v. Experian Information Solutions,* 386 F.3d 829, 834 (7th Cir. 2004) (construing FCRA), the court concluded that the plaintiff had failed to prove actual damages for emotional

distress. Although a plaintiff may rely on his own testimony to establish such damages, "he must explain the circumstances of his injury in reasonable detail," and may not "rely on conclusory statements" unless the "facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Id.* The court found the plaintiff's evidence insufficient, which consisted only of his own testimony that he was "embarrassed and humiliated" to be declined credit, it was "mentally and emotionally distressful when dealing with credit reporting agencies," and it was "embarrassing to go somewhere and have them check your credit and see all that stuff on there." *Id. See also Cousin v. Trans Union Corp,* 246 F.3d 359, 371 (5th Cir. 2001) (construing FCRA; holding that a plaintiff must either provide "corroborating testimony or medical or psychological evidence" to support an award for actual damages for emotional distress).

The text of and cases decided under the FCRA support my determination that a court need not, and should not impose the emotional distress damages standard when defining recoverable damages under the FDCPA.

### 2. Implications for Discovery re. Damages

Plaintiffs request discovery relevant to the issue of punitive damages on their state law invasion of privacy claim, namely: 1) information regarding the nature and extent of the defendant's collection practices; and 2) the defendant's written collection training manuals and guidelines. The defendants claim that the plaintiff has failed to plead facts supporting a punitive damage award arising from the plaintiff's invasion of privacy claim. The defendants, therefore, contest the plaintiff's discovery requests related to punitive damages on this claim.

Under Ohio law, the right of privacy is "the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned." *Housh v. Peth,* 165 Ohio St. 35, 35 (1956); *Rogers v. Buckel,* 83 Ohio App.3d 653, 658 (1992). One of the four varieties of invasion of privacy is "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh, supra,* 165 Ohio St. at 35.

If a plaintiff successfully pleads and proves an unjustified intrusion into privacy, he is entitled to nominal damages, as well as actual and punitive damages if the plaintiff proves such damages are appropriate. *LeCrone v. Ohio Bell Telephone Co.,* 120 Ohio App. 129, 131-32 (1963); s*ee also* Restatement (Second) of Torts, § 652H (1977) (permitting a plaintiff who has established an unlawful invasion of privacy to recover damages for "harm to his interest in privacy," "mental distress" resulting from the invasion, and "special damage of which the invasion is a legal cause"); *Rothstein v. Montefiore Home,* 116 Ohio App. 3d 775, 778 (8th Dist. 1996) (citing favorably to Restatement (Second) of Torts, § 652H.

The tort of invasion of privacy is designed to "compensate[] the victim for 'mental suffering, shame, or humiliation.'" *Rothstein, supra,* 116 Ohio App. 3d at 778; *see also LeCrone, supra,* 120 Ohio App. at 131 (invasion of privacy protects "primarily a mental [interest] rather than an economic or pecuniary interest."). Harassment by the defendants and the emotional harm it causes is relevant to setting damages.

Punitive damages are recoverable from a defendant in a tort action where the actions of the defendant "demonstrate malice or aggravated or egregious fraud." Ohio Rev. Code Ann. §

16

2315.21(E)(1). To award punitive damages, a court must find "actual malice," which is either 1) a "state of mind  .  .  .  characterized by hatred, ill will or a spirit of revenge"; or 2) "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty,* 32 Ohio St. 3d 334, 334 (1987); *McEnteer v. Moss,* 2005 WL 1283707, at *2 (9th Dist.).

In this case, without suggesting at this early stage that I will instruct the jury as to punitive damages, I conclude that the plaintiffs are entitled to the discovery they seek. First, the plaintiffs have alleged facts which, if proven, could persuade a rational jury to award punitive damages on their invasion of privacy claim. The defendants' alleged repeated calls to the plaintiffs' workplaces, threats to issue an arrest warrant for Mr. Davis, and threats to garnish Mrs. Davis's wages are acts that a reasonable jury could find indicate "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *See Preston, supra,* 32 Ohio St. 3d at 334.

The company's procedure manuals and training are relevant to whether the defendants acted with "hatred, ill will or a spirit of revenge" toward the plaintiffs. *See id.* If the persons contacting the plaintiffs disregarded the company's prescribed procedures or training, such evidence would be material to plaintiffs' claim for punitive damages. The plaintiffs may therefore discover these materials.

### 3. Ex Parte Contact Between Plaintiffs' Attorneys and Defendant's Current and Former Employees

Lastly, the plaintiffs argue that they may properly contact the defendant Creditors Interchange's current and former employees who are not represented by counsel. The plaintiffs urge

17

this Court to order the defendants to provide the plaintiffs with a list of current and former employees, their last known contact information, and their position these employees held during the timer period relevant to this case.

The Ohio Rules of Professional Conduct provide guidance regarding contact between an attorney and the unrepresented employees of an opposing party. An attorney representing a client "shall not communicate about the subject of the representation with a person the lawyer *knows* to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by court order." Ohio Rules of Prof. Conduct, Rule 4.2. A lawyer may not "imply that the lawyer is disinterested" when dealing with an unrepresented person on behalf of a client. Ohio Rules of Prof. Conduct, Rule 4.3. If the lawyer "*knows or reasonably should know* that the interests" of the unrepresented person "are or have a *reasonable* possibility of being in conflict with the interests of the client," a lawyer "shall not give legal advice to an unrepresented person, other than the advice to secure counsel." *Id.* Further, "[w]hen a lawyer *knows* or *reasonably should know* that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make *reasonable* efforts to correct the misunderstanding." *Id.*

In two advisory opinions, the Ohio Supreme Court's Board of Commissioners on Grievances and Discipline outlines the circumstances under which an attorney may contact current employees of an opposing party.[1] If an unrepresented current employee consents, a plaintiff may contact him *ex parte*, unless the employee is a "management employee" or "'speak[s] for' or bind[s] the corporation" or the employee's opinions "from the basis of management decisions" or "act or

---

[1]Opinion 90-20 and 96-1 analyze Disciplinary Rule 7-104(A)(1-2), replaced by Rules 4.2 and 4.3 of the Ohio Rules of Professional Conduct, effective February 1, 2007. Disciplinary Rule 104(A) is analogous to the current Rules 4.2 and 4.3.

omission in connection with the controversy may be imputed to or be an admission of the corporation." Ohio Sup. Ct. Bd. Comm'r Grievances & Discipline, Op. 96-1, at *2 (Feb. 2); *see also* Ohio Sup. Ct. Bd. Comm'r Grievances & Discipline, Op. 90-20, at *3 (Aug. 17). In interviewing an unrepresented current employee of the defendant, the plaintiff's attorney must "carefully avoid misleading the interviewees." Op. 90-20, *supra,* at *4. The attorney may not inquire about privileged communications with corporate or other counsel, and must explain that they represent an interest adverse to the defendant corporation. *Id.;* Op. 96-1, *supra,* at *2.

The plaintiff's attorneys may also contact unrepresented former employees of the opposing party *ex parte* with the former employee's consent. Op. 96-1, *supra,* at *2. Because "the former employee is no longer part of the corporation and no longer speaks for the corporation," the plaintiff's attorney is not limited by the former employee's role at the defendant corporation. *Id.* at *5. The plaintiff's attorneys must, however, "inform the former employee not to divulge any communications that the former employee may have had with corporate or other counsel," and the attorney must explain that she represents an interest adverse to the corporation. *Id.*

### Conclusion

In light of the foregoing, I conclude that the plaintiffs are entitled to conduct discovery directed to uncovering the identities and contact information of current and former employees who contacted the plaintiffs and others in the course of seeking to collect the debt putatively owed by plaintiffs. It would also appear appropriate to enable plaintiffs to have the same information for other current and former debt collectors employed by the defendant. This could lead to admissible information about the company's practices under Fed. R. Evid. 404(b).

The linchpin to implementing the discovery opportunities available under this opinion is consent on the part of current and former employees. The company and all persons acting on its behalf shall do nothing to affect the willingness of current and former employees to decide whether they are or will be willing to speak with plaintiffs' counsel. That is a decision for them to make independently, and unaffected by whatever the company may wish or desire.

In the event the company becomes aware that current or former employees have spoken with plaintiffs' counsel, it shall, moreover, do nothing as a result thereof toward, about or with such employees in response to their having done so that in any way adversely affects their current or future employment status or conditions with the company or any other actual or prospective employer.

Impermissible influence on the ability of current or former employees to speak with plaintiffs' counsel or retaliation for having done so shall be deemed contempt of court and if, on notice and an opportunity to be heard is found, shall be sanctioned accordingly.

Given the delay that has attended my resolution of this discovery dispute, the Clerk shall forthwith schedule a telephonic discovery/status conference so that, *inter alia*, plaintiffs can promptly procure the discovery they seek, and which this opinion opens to them.

For the foregoing reasons it is hereby:

ORDERED THAT:

1. An on the record telephonic discovery/status conference is set for December 5, 2008 at 1:00 p.m.;

2. The defendant and its directors, officers, employees, agents and other persons or entities working with it or on its behalf are hereby *sua sponte* ordered, pending further court order, to and shall refrain from any and all acts that might adversely affect consent to speak with plaintiffs' counsel on the part of defendant's current or former employees with whom, in light of this opinion, plaintiffs' counsel may speak about discoverable matters.

So ordered.

/s /James G. Carr
James G. Carr
Chief Judge